IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

ROSA BUTLER o/b/o J.B., :

    Plaintiff, :

vs. : CA 12-0382-C

CAROLYN W. COLVIN, :
Acting Commissioner of Social Security,[1]
                                           :

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action on behalf of her son, J.B., pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying an application for supplemental security income benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 19 & 20 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of the parties at the February 15, 2013 hearing before the Magistrate Judge, it is determined that the Commissioner's decision denying benefits

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Colvin is substituted for Michael J. Astrue as the proper defendant in this case.

should be reversed and remanded for further proceedings not inconsistent with this decision.[2]

Plaintiff alleges disability due to ADHD, generalized anxiety disorder, stereotypic movements, and disruptive behavior disorder. The Administrative Law Judge (ALJ) made the following relevant findings:

> 1. The claimant was born on February 20, 1998. Therefore, he was a school-age child on June 15, 2009, the date application was filed, and is currently a school-age child[3] (20 CFR 416.926a(g)(2)).
>
> 2. The claimant has not engaged in substantial gainful activity since July 11, 2009, the amended alleged onset date (20 CFR 416.924(b) and 416.971 *et seq*.).
>
> 3. The claimant has the following severe impairments: attention deficit hyperactivity disorder (ADHD); generalized anxiety disorder; stereotypic movements; and disruptive behavior disorder, NOS (20 CFR 416.924(c)).
>
> . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

---

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 19 & 20 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.").)

[3] The ALJ's indication that the claimant was a school-age child on the date of the decision, May 3, 2011, and hearing, March 20, 2011 (*compare* Tr. 15 *with* Tr. 28 & 35), is simply incorrect. Based on the claimant's birth date of February 20, 1998 (*see* Tr. 212 & 233), he was 13 at the time of the hearing and on the date the ALJ entered his decision, as is clear from his mother's testimony at the March 30, 2011 hearing (Tr. 36 ("J[] is 13.")). Accordingly, under the regulations, the claimant was an adolescent as of the date of the hearing and thereafter. *See* 20 C.F.R. § 416.926a(g)(2)(v), (h)(2)(v), (i)(2)(v), (j)(2)(v) & (k)(2)(v) (2012). The Court is of the opinion that the different age-group descriptors contained in the regulations obviously make a difference in evaluating functional equivalence—otherwise, there would be no need to create such descriptors—and, therefore, remand will provide the Commissioner with another opportunity to properly set up his analysis of whether claimant's severe impairments are functionally equivalent to a listed impairment.

. . .

**5.    The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a).**

. . .

**6.    The claimant has not been disabled, as defined in the Social Security Act, since July 11, 2009, the amended alleged onset date [(]20 CFR 416.924(a)).**

(Tr. 15, 16 & 28 (footnote added; emphasis in original).)  The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all supplemental security income cases, including the present one involving a claimant under the age of 18, the task for the Court is to determine whether the ALJ's decision denying benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).  "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue,* 370 Fed.Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam), citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Indeed,

---

[4]    This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.*, quoting *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1158-1159 (11th Cir. 2004).

In this case, the plaintiff contends that the ALJ: (1) erred in rejecting the opinion of the treating psychologist, Dr. Baltz, the opinion of the consultative examiner, Dr. Blanton, and the opinion of the teacher; and (2) erred in finding J.B. did not have marked impairments in at least two functional equivalence domains found in 20 C.F.R. § 416.926a.[5]

> An individual under the age of 18 is considered disabled if
>
> he has a "medically determinable physical or mental impairment[] which results in marked and severe functional limitations." The Social Security regulations establish a three-step process for determining whether a child is disabled. Under the first step, the ALJ considers whether the child has engaged in any substantial gainful activity. At step two, the ALJ considers whether the child has an impairment or combination of impairments that is severe. At step three, the ALJ must decide whether the child's

---

[5] During oral argument, plaintiff's counsel also contended that the ALJ erred in failing to find that J.B.'s impairments meet, medically equal, or functionally equal Listing 112.05D. As an initial matter, the Court notes a general concern for plaintiff's counsel having waited to the eleventh hour to raise this issue. However, since counsel for the government did not object to this issue being raised during the hearing, the undersigned will consider this claimed error.

As far as whether J.B.'s impairments meet or medically equal Listing 112.05D, the undersigned finds that the claimant has not satisfied his burden in this regard, *see, e.g., Gray ex rel. Whymss v. Commissioner of Social* Security, 454 Fed.Appx. 748, 750 (11th Cir. Dec. 8, 2011) (per curiam) ("The burden lies with the claimant to prove that he meets or equals a Listing."), as there is no evidence of "[a] valid verbal, performance, or full scale IQ of 60 through 70[.]". Of particular significance, Dr. Lee Stutts, a licensed psychologist, observed in his August 18, 2009 consultative report that all of J.B.'s scores on the WISC-IV were invalid. (Tr. 334.) Moreover, the best that Dr. Donald Blanton could conclude in his March 23, 2011 consultative evaluation was that J.B.'s "verbal comprehension [score] of 63 *may* represent a valid *estimate*[] of his Full Scale IQ *if* his ADHD problems can be resolved." (Tr. 349 (emphasis supplied).) Such speculation by Dr. Blanton is simply not sufficient to establish that J.B. has a ***valid*** verbal, performance, or full scale IQ score of 60 through 70 for purposes of meeting or medically equaling Listing 112.05D. As for functional equivalence, the undersigned will only tangentially revisit this issue in considering the claimant's argument that the ALJ erred in finding that he did not have marked impairments in at least two functional equivalence domains found in 20 C.F.R. § 416.926a.

4

>impairment meets, medically equals, or functionally equals a listed impairment.
>
>>In determining whether an impairment functionally equals a listed impairment, the ALJ must consider the child's ability to function in six different "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) "caring for yourself;" and (6) health and physical well-being. If the child has "marked" limitations in two of these domains, or an "extreme" limitation in any one domain, then his impairment functionally equals the listed impairments, and he will be found to be disabled. A "marked" limitation is one that seriously interferes with the child's ability to initiate, sustain, or complete activities. An extreme limitation is one that "very seriously" interferes with the child's ability to initiate, sustain, or complete activities.

*Coleman ex rel. J.K.C. v. Commissioner of Social Security*, 454 Fed.Appx. 751, 752 (11th Cir. Dec. 9, 2011) (internal citations omitted). In the instant case, the ALJ determined that J.B.: (1) "**has not engaged in substantial gainful activity since July 11, 2009, the amended alleged onset date**" (Tr. 15); (2) "**has the following severe impairments: attention deficit hyperactivity disorder (ADHD)[,] generalized anxiety disorder[,] stereotypic movements[,] and disruptive behavior disorder, NOS**" (*id*.); (3) "**does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments**" (*id*.); and (4) "**does not have an impairment or combination of impairments that functionally equals the listings**[.]" (*Id*. at 16; *see also id*. at 17-28.)

Prior to addressing any of the errors raised by the claimant in his brief (*see* Doc. 14), this Court finds it disturbing that the ALJ failed to either find that J.B. has a severe impairment in terms of his intellectual functioning or set forth his reasoning for finding that any impairment in intellectual functioning constitutes a non-severe impairment.[6]

---

[6] It is interesting that the ALJ found as severe impairments the same four impairments noted by the non-examining psychiatrist in his disability evaluation form. (*Compare*
(Continued)

5

To the extent the ALJ's opinion can be read as implicitly establishing that any impairment in intellectual functioning is a non-severe impairment, this Court finds that such implicit determination is not supported by substantial evidence. This conclusion is reached because all psychologists and psychiatrists to have examined and evaluated J.B. estimated, or at least suspected, a significant impairment in intellectual functioning (*compare* Tr. 334 (Dr. Lee Stutts' Axis II diagnosis: "R/O Borderline Intellectual Functioning" and his estimate that J.B.'s intellect falls in the borderline range) *with* Tr. 342-343 (office notes of Dr. Timothy Baltz, J.B.'s treating psychiatrist, setting forth his suspicions that J.B. intellect is borderline or mild MR) *and* Tr. 350 (Dr. Donald Blanton's Axis II diagnostic impression: "MILD MENTAL RETARDATION (ESTIMATED)").

The ALJ's failure to specifically address whether J.B. had a severe intellectual impairment has far-reaching implications inasmuch as the ALJ failed to consider the impact of any intellectual impairment in his analysis of whether J.B. has an impairment or combination of impairments that functionally equals the listings. (*See* Tr. 21-22.) However, this is but the initial of several reasons why the ALJ's conclusion that J.B. "**does not have an impairment or combination of impairments that functionally equals the listings**" (Tr. 16) is not supported by substantial evidence or, otherwise, is legally deficient.

As touched upon earlier, though J.B. was thirteen (13) at the time of the hearing (*compare* Tr. 212 & 233 (J.B. born February 28, 1998) *with* Tr. 35-36 (at the March 30, 2011 hearing, J.B.'s mother testified that he was 13)) and when the ALJ entered his decision

---

Tr. 15 (noting claimant "**has the following severe impairments: attention deficit hyperactivity disorder (ADHD)[,] generalized anxiety disorder[,] stereotypic movements[,] and disruptive behavior disorder, NOS**") *with* Tr. 335 ("**IMPAIRMENTS:** ADHD COMBINED TYPE, ANXIETY FEATURES, STEREOTYPIC MOVEMENTS, DISRUPTIVE BEHAVIOR D/O NOS").)


(*see* Tr. 28 (May 3, 2011 decision)), the ALJ incorrectly indicated that the claimant was a school-age child on the date his application was filed and "currently" (Tr. 15), as opposed to correctly identifying J.B. as an adolescent at the time of the hearing and decision, *see, e.g.,* 20 C.F.R. § 416.926a(g)(2)(v) ("*Adolescents (age 12 to attainment of age 18).*"). This "misidentification" is important, of course, because the ALJ thereafter evaluated functional equivalence in the context of J.B. being solely a school-age child (Tr. 23-27), as opposed to addressing the issue in both contexts, that is, as a school-age child and as an adolescent.[7] *Compare Leonard ex rel. A.J. v. Astrue*, 2011 WL 7090710, *4-11 (N.D. N.Y. Nov. 3, 2011) (magistrate judge observed that the ALJ noted the claimant was a school-age child on the date the application was filed and an adolescent on the date of the hearing decision and that the ALJ evaluated the claimant as both a school-age child and adolescent with respect to the challenged domains of attending to and completing tasks, interacting and relating to others, and caring for oneself), *report & recommendation adopted by* 2012 WL 209145 (N.D. N.Y. Jan. 24, 2012), *with Gutierrez v. Astrue*, 2009 WL 4722239, *3 (E.D. Wash. Dec. 4, 2009) ("ALJ Gaughen found J.G. was a school-age child at the time the application for benefits was filed and an adolescent at the time of the hearing. . . . At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that medically met or equaled a listed impairment . . . or functionally equaled a Listing . . . . The minor was found not to have an "extreme" limitation in any domain of function, or "marked" limitations in any two

---

[7] As previously indicated, if the age descriptors meant nothing, the regulations would not make any age distinctions. Indeed, as recently observed by the United States District Court for the Southern District of Georgia in *Blackshear v. Astrue*, 2012 WL 3231023, *1 n.1 (June 29, 2012), *report & recommendation adopted by* 2012 WL 3230428 (S.D. Ga. Aug. 6, 2012), 20 C.F.R. § 416.926a(b)(1) & (f) explain the "different levels of development and functioning expected for different age groups[.]"

domains *as either a child or adolescent*. The ALJ concluded the minor child was not disabled since the date the application was filed." (emphasis supplied; internal citations omitted)). In the instant case, the ALJ's failure to consider functional equivalence in the context of J.B. maturing to adolescence (in addition to consideration of the issue in the school-age child context) was certainly error requiring remand of this case, *see Tisdale ex rel. B.O.H. v. Astrue*, 2008 WL 4145838, *3 (M.D. Fla. Sept. 8, 2008) ("This [harmless error] argument is unpersuasive. In determining whether the child had marked or extreme limitations, the law judge was directed to compare the child to children his age who do not have impairments. If, in making that determination, the law judge compared the child to the wrong age group, the determination would be fundamentally flawed. And that is so, even if the law judge correctly stated the definitions of marked and extreme limitations. . . . [T]he decision reflects an error that warrants reversal."), whether pure legal error or a combination of legal and factual error. *See Blackshear, supra,* at *7 ("Because the ALJ found that Claimant was a school-age child at the time Plaintiff applied for benefits but matured to an adolescent child by the time of his decision, the Court *will examine* the different levels of functioning expected for each age group in the domain of moving about and manipulating objects." (emphasis supplied)); *compare id. with Leonard, supra* and *Gutierrez, supra*.[8]

Finally, in evaluating functional equivalence, the ALJ relied upon the September 14, 2009 evaluation and "domain" findings of a non-examining, document-reviewing psychiatrist, Dr. Robert Estock (*see* Tr. 335-340; *compare id. with* Tr. 23-27), while either

---

[8] If bears little mention, of course, that it would be improper for this Court to examine the different levels of functioning expected for each age group in the six domains contained in the regulations since the ALJ did not, in the first instance, examine those expected different levels of functioning. *Cf. Tisdale ex rel. B.O.H., supra.*

ignoring subsequent relevant information or implicitly suggesting that subsequent information would have no impact on the "domain" limitations found by Estock. For instance, in the "domain" of acquiring and using information, the ALJ relied upon Estock's finding of "less than marked limitation" despite also noting that a January, 2011 letter from the school counselor reflected that J.B. failed one or more core classes (i.e., math, English, science, or social studies)[9] during the first semester of 7th grade—a grade which claimant's mother testified he was repeating—and ignoring the opinions of all treating and examining psychologists/psychiatrists estimating J.B.'s intellectual functioning as falling within the mild mental retardation to borderline range,[10] as well as the treating psychiatrist's January 18, 2011 recommendation that J.B. "be put back in Special Ed[]" (Tr. 342) and other school records reflecting low standardized test scores (*see id.*) and that J.B. was still failing English and math during the first nine weeks of the second semester of 7th grade (Tr. 282-283).[11] This Court simply cannot find that the ALJ's dogged reliance upon the "domain" limitations found by a non-examining physician constitutes substantial evidence supporting the ALJ's ultimate finding of non-disability where all other evidence the ALJ cites to or ignores indicates that the claimant is more limited than the non-examiner suggests. *Cf. Green v. Commissioner of Social Security*, 2010 WL 4941425, *4 (M.D. Fla. Oct. 27, 2010) ("While the Commissioner correctly notes that

---

[9] Indeed, the record reflects that J.B. failed math, science, and social studies during the first semester of the 7th grade. (Tr. 288.)

[10] Dr. Baltz, J.B.'s treating psychiatrist, based his "suspicion" of "Mild MR" on J.B.'s scores of 73 on the Woodcock Johnson III and 71 on the CTONI in February of 2010, scores which he believed would be "equal to a 60 on a Wisc IV." (Tr. 342.)

[11] While this Court has focused on the domain of acquiring and using information, the same problem persists with evaluation of other domains, such as attending and completing tasks and interacting and relating with others.

9

'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision,' [] this is only true if the decision is sufficient to enable the court to conclude that the ALJ fully considered the claimant's condition. Here, the omitted evidence is not cumulative and is patently inconsistent with the ALJ's findings. Although the Commissioner contends that the failure to further evaluate the school records and the assessment was not necessary 'because any limitations therein would be inconsistent with [the] record[] as a whole,' this contention is unpersuasive. *It is the ALJ's duty to evaluate the evidence and either credit it or discredit it*. The Commissioner's contention assumes that the evidence, if evaluated, would necessarily be discredited—a conclusion that is not within the purview of a reviewing Court. It is not the task of this Court to weigh the evidence and establish whether it is consistent or inconsistent with the record in the first instance; that is the duty of the ALJ." (emphasis added)), *report & recommendation adopted by* 2010 WL 4941653 (M.D. Fla. Nov. 29, 2010). This is particularly true where, as here, the ALJ has not properly evaluated the claimant both as a school-age child and as an adolescent.

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying the minor claimant's application for supplemental security income benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g),[12] *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for

---

[12] Although the application in this case is solely for supplemental security income benefits pursuant to 42 U.S.C. § 1383(c)(3), remand is proper under sentence four of § 405(g) because § 1383(c)(3) provides that "[t]he final decision of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."

further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

      **DONE** and **ORDERED** this the 13th day of March, 2013.

                s/WILLIAM E. CASSADY
                **UNITED STATES MAGISTRATE JUDGE**